Good morning counsel. Good morning your honor. Brian Dunn on behalf of plaintiff Emmanuel Bracy and if it would please the court I would like to reserve five to seven minutes. The time that's showing is your total time remaining. Thank you very much your honor. Thank you. With regard to this particular case we addressed three specific areas that we contend to be indicative of error and when we look at what occurred in this case we're looking at the cumulative effect of all three of these things and specifically when we look at the photographs that were introduced over plaintiff's objection. I'm going to ask you to stand up straight because the mic can't get you if you're leaning over. Okay thank you very much. When you look at the issues related to the photographs you have to understand that when we're talking about issues involving the objective reasonableness of law enforcement officers actions the jury is only permitted to consider things that the officers saw, things that they personally perceived, things that would allow the jury to determine whether a reasonable officer in the position of these officers would have concluded. How about things that they were told by credit worthy persons? Absolutely your honor. Anything that's in their state of mind. However the issues with regard to these photographs. Mr. Bracy was carrying a gun when he did the take-ups. They were told that. But the photographs. I apologize. That's what the photographs show. The photographs also depict other things that they weren't told though your honor. Specifically the manner in which he wielded the firearm. The fact that he held it in one of these photographs at the head of a female patron. The fact that he was using this in a manner that specifically threatened some of the individuals who were in the check the check-and-go check cashing store at the time. And when we see these things we understand that categorically speaking the concept of them seeing this and the jury seeing this when the officers never saw this produces a very significant prejudicial impact that is very difficult to to overcome when we get to the issues that are actually going to be presented to the jury. It seems that the district court weighed everything and came to a compromise position rather than submitting all the photographs or the entire video videotape limited it to some still images. So why wasn't that within the district court's broad discretion in trying to balance the probative nature of these steals versus the prejudice? How can we say that was an abuse of discretion? Great point your honor. And specifically when we're talking about what the district court did. Even a compromise that involves the introduction of evidence that the officers did not see does not make that evidence permissible under 403. And we do understand that the district court did not let in the whole video. And we do understand that the district court let in only three photographs. But this does not change the fact your honor that the officers that were involved simply did not see these things. And this court has held over and over again that with entitled to hear what they saw and what they heard and they never saw or heard any of these things. That was brought out on cross-examination. It was it was repeatedly your honor. But nevertheless there's a saying that you can't unring certain belts. And this these photographs were showed periodically throughout the course of the trial from opening statement to closing argument. These images are embedded in the jury's mind. Counsel I want to go back to thank you for your answer. Thank you your honor. I want to go back my next question to what you said when you began. And I want to clarify are you arguing that the three errors that you want to talk about are independently enough to warrant a reversal or is it the cumulative effect of all three together? The three being the photographs, the testimony of Detective Marullo, and the testimony of Sergeant Mark. Once again great point. Independently our position is that any of these would constitute reversible error. The issue that we have however your honor is exacerbated by the fact that all three of these errors came in. All three of these issues came in. And when we talk about what is admissible and what's not admissible I'm sure the court is well aware of the concept of harmless error. If this would not have changed the outcome of the courts or the jury's decision I could completely understand that even if it were erroneously admitted for example these kinds of things would would constitute harmless error. But when we look at even the second aspect of what we were talking about your honor and specifically the gang expert testimony. And I there's a quote in our brief that specifically is from the this court the Ninth Circuit and it's from a case of Huizar versus City of Anaheim and it states and I quote if a party challenging the introduction of gang evidence and expert testimony is willing to stipulate to the fact of gang membership no expert testimony about gangs such as gang activities tattoos or monikers should be admitted. And that specific prohibition came from Huizar versus City of Anaheim 840 F 3rd 592 at 601 to 02. This court has specifically held that this type of evidence should not come in. And there was some reference in the in the appellants or the appellee's brief that perhaps we were not able to arrive at a stipulation. As the court will see in the evidentiary record at page 6 699 we specifically conceded we want to concede that he's in the gang. We will concede and we will stipulate to do this. The reasons why the stipulation did not occur therefore are not due to any failure on behalf of the plaintiff to concede to this. And when you when you take a situation like this when the gang expert testimony should not be it should not be admitted. We have to understand the consciousness behind that which directly relates to how prejudicial this is. But if you're willing to stipulate to the evidence that the police want to admit on gang involvement where's the harm? What exactly what specific about that testimony are you now objecting if you were willing to stipulate at the time of trial? When we start, another great point, we're talking about the fact that there's no evidence that this crime was was committed in furtherance of any gang activity. There's simply no evidence of that and their expert conceded this. But why is it prejudicial? I'll tell you why. When an expert gets in front of the jury and starts testifying under the cloak of his expertise and he's talking about his training and experience with regard to dealing with gang members, he's talking about homicidal behavior of other gang members, the fact that gang members that are caught with guns brutalize each other in the context of disciplinary procedures, the context of all of these nefarious and criminal activities that gang members introduce in their gang activity is associated with and none of this ties to Mr. Bracey at all. It's it's the exact type of guilt by association that the Ninth Circuit has repeatedly said that they have a problem with. And when you look at this, if he testifies for an hour to a jury about all the horrible things gang members do and all of the aspects of gang subculture that are related, when there's absolutely no nexus to Mr. Bracey, what he is essentially saying is that all gang members do the same things or they all think the same way or they all act the same way and that simply is not borne out by the evidence. Finally, when we get to the issue of Sergeant Markell, it must be noted that the defendants in this case had a bloodstain pattern expert. They had a person that was specifically designated. Her name was Anita Zanin. It wasn't until the day of trial of Sergeant Markell's testimony that we first found out that he was going to be turned into a bloodstain transfer expert and any references to the fact that we opened the door in that regard are misplaced because we specifically did not. In fact, that testimony came through the direct examination of Sergeant Markell in which he specifically answered that this is blood transfer evidence. Finally, we look at whether or not... Can I ask you was there any reason given as to why the named blood spatter expert was not called? Was there reason given? The record is silent and we weren't told that. More importantly, we were not told this before trial because had we been told this, we would have filed a motion to eliminate to keep anyone that wasn't a blood spatter expert excluded. We would file a motion to eliminate to keep any such testimony from coming in. We were under the assumption that the expert that they hired and paid, who we deposed, would be the one that was coming. And it wasn't that person. Instead, it was a police practices person. And so we were caught off guard in that regard. And with regard to the concept of whether this is expert testimony or whether it isn't... Well, it can't be expert testimony if you're not an expert. Absolutely, Your Honor. I'm getting ahead of myself, but I would argue that the people that testify about transfer stains, they spend their time in laboratories. They're not the types of individuals who are out on a shooting range dealing with police practices. They're usually individuals who don't even have law enforcement degrees. I mean, law enforcement, they're not sworn officers. They're scientists. And when he gets in front of the jury and starts talking about the concept of a transfer stain, that's a very critical issue in this case because it's not that he stashed the gun. Our position has always been when he did it. And when you're starting to say that this is, in fact, indicative of a transfer stain from his left hand, you're imposing expert testimony through the mouth of someone who's not an expert. Did you have an expert on blood spatter versus blood transfer? We did not, Your Honor. And was that decision affected by this surprise in terms of what the other side's experts were going to be on? Excellent point. We took the deposition of their expert, Anina Zanim, and without going into too much detail, we were very effective, I believe, in the deposition. And we figured that based on that deposition testimony, we would be able to cast such doubt on the credibility of it. You were prepared for her, not for him. Exactly. If you had known that there was not going to be testimony from this expert, do you think you would have hired an expert to come in and testify? We would have, at a minimum, seriously considered it, Your Honor. But we thought that we did such a good job at, as I said, attacking the credibility of this one expert. So we were, of course, surprised. And if the Court has any further questions, I'll entertain them at this time. If not, I'll pass the floor. All right. Thank you, Counsel. Thank you, Your Honor. Chancellor McFarland, you have time left. Thanks again. Good morning, Your Honors. Good morning. I think a lot of these issues that were addressed in the argument are already addressed in the brief, so I'll try not to be overly duplicative. Okay. With regard to the, I mean, Counsel talks about the cumulative effect, except that these three, the three things that they point out don't overlap in the sense that they don't, they're not cumulative in that they're not the same issues at all. They're not overlapping in the sense that they build on each other. They're completely separate issues and deal with separate evidentiary problems. So they're not naturally cumulative. Be that as it may, I think our briefing shows there isn't prejudice in any case. With regard to the photographs, with regard to the potential prejudice, there was a jury instruction offered by the Court to clarify for the jury that these pictures were not being used in any way to describe the knowledge of the officers for purposes of reasonable force. What was the purpose of those photographs? The photographs, well, first of all, there's the issue of the stipulation as to whether he actually used the gun or that was the same gun that was in the car. Counsel conceded himself that that was the same gun. There's no, there's no evidence, there's no stipulation, so that was still a potentially open issue that needed, that was properly addressed by evidence. But they also showed his, his comfortable, his comfort and felicity in using the gun, his use of the gun aggressively on that same day, and these go to pregnant pauses on the, on the other side. That the implication in, in the, in the incidents that the plaintiffs wanted to enhance is that, of course, he would never have drawn a gun on police officers. Of course, he would never have pointed. Did the defense offer to stipulate that the robbery had been done by the use of a gun? That was our contention, by the same gun, in fact, that was found in the car. That was always our contention, yes. Then if the defense was stipulating that the robberies had been done by Bracey, by the use of a gun, what was the purpose, again, of showing the photographs to the jury? Well, that was something, that was always the defense contention. Without a stipulation from plaintiffs, and there was no stipulation before the jury, so there was no actual evidence of that. We had to stipulate. That was something we needed to prove, so we were, we were, so one of the initial purposes of the pictures... I'm much more familiar with cases, civil cases, that involve an admission of liability. When there's an admission of liability, that removes, as being relevant, all the acts and omissions which lead to the negligence which caused the damages. Right. Right? And it's a common defense tactic to admit liability and go to damages so that all the bad stuff of the negligence doesn't come out. Right. If the plaintiff, in this case, admitted to the use of a gun in the robberies, and admitted that he was a gang member, I'm having difficulty understanding the relevance. I understand the prejudice, but I don't understand the relevance of the photographs or the testimony of Sergeant Marullo. Right. The case comes down to two competing narratives. First of all, do you concede that the defendant conceded? I think you mean the plaintiff, but yes. I mean, I keep thinking of the defendant in the criminal case. Do you concede that the plaintiff conceded or admitted Bracey used a gun in the stick-ups? Bracey is a member of a gang. Counsel conceded both of those things. He even went further to concede that the gun in the robbery was the same gun found in the car. Say that again slowly, sir. That the gun that was used in the robbery was the same gun that was found in the car. Right. Counsel agreed to all those things. There was no evidence of those things submitted to the jury. Counsel made argument to that. Why, in the face of concessions by the plaintiff's counsel, that the gun was used in the robbery, the same gun, and that he was a member of a gang, why do you need the photographs or Marullo? Right. Except to prejudice the case because it was undisputed that the gun was stashed in an A.C. vent because that's where it was found. So the competing narratives are, was that gun placed there promptly after the robbery before the police pulled him up? No, but this answers your question. That's the third issue. The first two issues is, why do you need the photographs of Bracey doing the stick-ups with a gun if it is conceded that A, Bracey did the stick-ups, and B, this is a gun he used, and C, it's the gun that's found in the car? Right. That's actually the question. In fact, the exact question I'm trying to answer. That's the exact question I'm trying to answer, Your Honor, because the dispute comes down to the detectives all testify they saw a gun in his hand when they pulled him over. The plaintiff's implication in all this is he couldn't possibly have put the gun in the A.C. vent after he was pulled over by the police. That didn't happen. The photographs and Murillo's testimony both go to his felicity with a gun, his training of gun practices. It all goes to the fact that he was sufficiently trained and capable with a firearm to stash it in the A.C. unit after being confronted by the police in the spur of the moment. Because they're saying... With substantial injuries at that point. I mean, isn't that relevant to the argument you're making? That at the time that he, if your theory is correct, that he stashed the gun after the shooting, he had substantial injuries somewhere on his body. He was seriously injured. Right, and that goes to the, I'm sorry, that goes to the exact timing of, I mean, obviously there was a lot of events happening very quickly. No, but doesn't it go to his expertise in handling a weapon? The photographs, absolutely. Not the photographs, the fact that he was injured. I'm trying to add to your list of reasons why it's given his level of training and... Yes, I'm sorry, I misunderstood your point. Yes, that's exactly right. The problem I had with the gang testimony is, first of all, there was no, to me, there was no foundation laid as to how this particular officer was familiar with the gang, specific gang that Mr. Bracey belonged to. It was global gang testimony. And it went into exactly the same way that was faced in this case, without, to me, any foundation that the officer had any prior experience along these lines with gang members. He had arrested gang members in similar scenarios, had interviewed a number of gang members from this gang and found out the practices. It was just kind of a gestalt, a telling about what gang members do. Why wasn't a better foundation laid for this testimony? Well, I guess, in the abstract, I can't exactly answer that question, because I wasn't at trial, but to... Go from the rest... In an attempt to address your question. The testimony was to gang practices generally, because a lot of gangs follow the same practices. It would be the same in a products liability lawsuit, talking about the practices of pharmaceutical companies. You wouldn't necessarily, I mean, obviously, you could target a particular company, but the industry as a whole has certain practices that the industry as a whole follows. And that's true of all. And his testimony... Generally, if a pharmaceutical expert is testifying, it will say, I have experience with this company, this company, this company, and I did it for this many years, and that's how I know how they function. And his testimony was that he had a great deal of experience with a great many gangs, and that this was the practice of gangs as a whole. Now, your issue, I think, goes to exactly his cross-examination, which goes to the... Before you get to cross-examination, there's a foundational requirement in terms of an expert. If you're going to qualify as an expert, there's a foundational requirement that your expertise matches your testimony. And I'm not sure that was done in this case, because he talked about, you know, why gang members want guns and what they're taught to do with weapons. And I didn't see how just saying that you've been on the gang task force for so many years doesn't necessarily mean that you've acquired this type of information. How was that type of information acquired? I think that's exactly what it means, Your Honor. He testified at length. In fact, plaintiff complains about the fact that he testified at length as to his expertise in dealing with gangs and gang practices and how gang members handle guns. And his testimony was... How do you say he acquired that, specifically? By dealing with hundreds of homicide cases. Dealing with? Well, we were investigating and prosecuting. I mean, not prosecuting in court, but investigating and charging. And that's what police do. Where in the record can we look at where he told us what his expertise was? Where do we go for that? Well, that would be the first several pages of his testimony. I don't know if I have the pages offhand, Your Honor. But that would be... He testified at some length about his expertise and all the experience he had in dealing with gangs and gang practices in the course of those investigations. How they dealt with guns, finding guns in stash spots, and so forth. I think that testimony was all there. In fact, plaintiff complains about that testimony because he says it puts a taint on his plaintiff. Well, I'm asking you, though... But the testimony's there. That's why he's complaining about it. But my difficulty is with the lack of specificity regarding how that knowledge was acquired. Anybody can get up and say, I know this, but tell me how you know it. Tell me specifics about this particular gang that you dealt with. Because they're in the Los Angeles area. That's a very wide area, and you wouldn't necessarily have come into contact with this particular gang. He didn't have testimony as to this particular gang, I believe, Your Honor. I All gangs do this. This is a general practice by gangs, and in fact, it was very consistent with what Mr. Racey did. So that would actually reinforce... Isn't that the kind of general testimony that we've said should not be admitted? If a person is willing to stipulate that they are... If a person's willing to stipulate that he's a member of a gang, haven't we said that this type of testimony shouldn't come in? His testimony was significantly limited when that stipulation was offered, Your Honor. He had a much broader scope of testimony he was going to give. It was very much narrow to just gun practices. The more general testimony about gangs was exactly what you're saying, Your Honor, his expertise and how he came to all this knowledge, and all the hundreds of cases he dealt with in the investigations and whatnot, how he learned about gang practices. That was all about his expertise. Mr. Walsh, can I ask you a question? Of course. It's been prompted by the questions that were asked by Judge Rollinson. Did the defendant object to Marullo testifying on the basis that he didn't have any expertise as to this particular gang? I don't recall that objection, Your Honor. Counsel, I'd like to... I don't want to... But that would have been plaintiff... It was our expert, Your Honor, just to clarify. Plaintiff would have been... Mr. Bracey. Right. He was actually a plaintiff. I don't recall that objection, Your Honor. We understand. Counsel, I want to ask about Sergeant Markell, if Judge Rollinson will allow me. He clearly was identified as an expert on the use of force, the policy of the department, and the training on use of force that these officers would have. And that's clearly relevant and to be expected, given the nature of this case. But then when he took the stand, he wandered well off the path of that blood transfer versus blood spatter. I'm not sure that's the main issue. But for me, the main issue is... And then he recreated the incident and said, based on everything he looked at, this, ladies and gentlemen of the jury, this is what happened. Why was he allowed to do that when that clearly was not in his expert report? Well, both police practices experts, plaintiffs and defendants, based their opinion on reasonable force on their conclusion of whether or not Mr. Bracey had the gun out at the time the police pulled him over. Both experts testified as to their conclusions as to whether or not he had the gun out at that time and what the basis for that conclusion was because that, of course, then defines reasonable force after that. So both parties agreed that... It doesn't have to. I mean, his testimony based on his report was that here's how police officers are trained. If they see a gun, they can react in a way. If they don't see a gun, they have to react in a different way. And here's the department's use of force policy. But now you're saying both, the detective and the sergeant, went way beyond that and said, ladies and gentlemen, here's what happened. In other words, accepting, I accept it was true that all five of these police officers saw a gun. Now, maybe they did or they didn't, but that's up to the jury to decide. Why are these witnesses being allowed to say that that's, in fact, what happened? Well, I think both... It's not necessary for their expert testimony. Well, I think both experts opined that, in the plaintiff's case, the force was unreasonable. In our case, of course, the force was reasonable. And the basis for that, part of the basis for that opinion was their conclusion as to whether he did or did not have the gun. So part of that opinion then becomes what is the evidence that he did or did not have a gun. And both experts went into that territory in terms of... Why not put that in the expert report? And that's why we have reports is we give the other side notice. This is the testimony we're going to present. The other side can look at that, evaluate that plan accordingly, and bring motions and eliminate if they feel that that's necessary. But here, at least I'm more familiar with Sergeant Markle's testimony, here at trial he clearly wandered way off the written report that was submitted to plaintiff's counsel. Why did the defense attorneys feel that that was appropriate? Well, I think if there was any ambiguity about the scope of his testimony, that was... No ambiguity, I'm asking. It's not in the report. I think this was all considered supporting evidence for the conclusions in the report, and it was testified in detail in his deposition explaining this was the basis for his opinions, including the blood on the AC, that this was the evidence he looked at, and this is how he came to the conclusions he came to. I tried cases for a number of years, 30 years, in which I actually defended police officers. And I worked with a lot of experts, and I told them, I want you to put in your report exactly what you looked at, exactly what you considered, and exactly what your opinions are and what they're based on. This wasn't here. And yet, at trial, Sergeant Markle said, above and beyond the policy and the training, ladies and gentlemen of the jury, here's what happened. Well, at that point, and I take your Honor's point, at that point we were also following... The plaintiff's expert had already testified to a similar scope. His understanding of the basis for his opinion is there was not a gun, and the facts that led him to the conclusion that there was not a gun. Our expert at that point was following suit. I think it was our understanding that was within the scope of the reasonable force opinion, that essentially, including the blood, was just supporting evidence. He didn't have an opinion about the blood. His observation of the blood was... He didn't have an opinion about the blood. Well, he had an observation. That was part of the support. That supported his opinion about reasonable force. His actual opinion was that the force was reasonable because he had a gun. And part of the supporting evidence for that was his observation of the blood on the AC. Counsel, may I ask you why the defense decided not to call the blood spatter expert that had been named? I'm sorry, Your Honor. I wasn't involved in the trial, and I don't know. There's nothing in the record that describes that at all. Then I have a different question. If an individual testifies as an expert and also as a lay witness, which he was for the blood spatter evidence because he's not an expert. He quite expressly said he was not a blood expert. That was very clear. Isn't the court required to give a specific instruction to delineate the expert testimony from the lay testimony? I don't think we would object to that. I don't recall plaintiff... But if the court does not do that, isn't that reverse for error? Not if it's clear from the testimony itself. How can it be clear from the testimony itself? Because Markle expressly said over and over again he's not a blood expert. He doesn't know about this stuff. But how does the jury know how to filter that evidence if the court doesn't instruct on the difference between expert testimony? Because if an expert instruction is given and there is no instruction that tells them how to deal with all of the testimony that's given by the expert, the natural inclination of the jury is to treat it all as expert testimony because he's been designated as an expert. That's why it's so important for the court to delineate. For this part, he's testifying as a lay witness, and you treat the testimony as you would any other lay witness. For this part, he's testifying as an expert and can give conclusions that lay witnesses couldn't do. To me, that's a pretty serious error in this case. I'm not arguing that it might have been better and clearer if that had happened, Your Honor. I think Markle's testimony is very clear over and over again that he's not a blood expert, that he just observed the blood and that was part of the basis for his opinion that the gun was stashed afterwards. But he repeated it several times. I don't see how that isn't remotely ambiguous to the jury, that he is not claiming to be a blood expert anyway. It's not ambiguous to the jury what to do with it. They were undirected as to what to do with that evidence without an instruction from the court. Was there an instruction requested by the plaintiff on this issue? No, Your Honor. There was no instruction requested at all on that. The defense thought the testimony was clear, and apparently the trial court did as well. The plaintiff objected to this testimony. Yes, that's true. But given the testimony, there was no request for instruction. It could be plain error for the district court to not give the instruction after allowing this evidence to come in. I understand Your Honor's argument. I'm not arguing. Or point. I'm sorry. I didn't mean to misspeak. I have a factual question, if you could help me, and perhaps I missed it in the briefing, and if so, I apologize. But I understand it's clear that all of the police officers at the scene who fired their weapons clearly testified they saw a gun before the shooting, that the plaintiff was holding a gun before the shooting. They were all looking into the car. They saw a gun, and that's why they shot. But then a number of minutes went by before they got into the car. The plaintiff was seriously, critically injured. Did we have any testimony at trial as to what they saw between when they shot and when they got into the car? They couldn't see him because he was below the top of the seat. So they couldn't see him and what he was doing, which is why they didn't immediately go into the car because they weren't sure if he still had the gun. They weren't sure if they were in danger. They kept calling him to come out. They couldn't see him. And there is testimony of that, I believe, Your Honor, that they lost sight of him. That's when they stopped shooting, but they weren't sure until they came out of the car. Thank you. All right. Thank you, counsel. You've exceeded your time. We helped you do it. Thank you. Rebuttal. Thank you very much, Your Honor. And briefly, the record should be clarified on one major point. With regard to Sergeant Markell, he did not submit a Rule 26 report. He was what is called a non-retained expert. And the city of Los Angeles used him as a non-retained expert pursuant to Federal Rule of Civil Procedure 2682 on the grounds that because he was an employee, he didn't have to provide a report. So the scope of his testimony was designated, if the court would like to see, it's at page 590 in the evidentiary record, and essentially in summary it talks about that he is going to reference issues regarding police practices and the objective reasonableness of the police actions. Let me just interrupt you. This was something in writing provided prior to trial by the police officers? Yes. In fact, we lodged it with the court. I appreciate your clarification and my misunderstanding, but there was a written summary of his testimony prepared and presented. Correct. And he went outside the scope of that. Everything else the court got was exactly right. He was never designated as an accident reconstruction expert. He was never designated as a blood transfer expert. He was never designated to talk about anything that happened after the fact. In other words, any issues related to crime scene analysis, and I cannot reiterate this enough, they had an expert who did submit a Rule 26 report who they did say would be testifying about this. Now, with regard to some of the other issues, very briefly, there is an elephant in the room which could be described as prejudice. And specifically, when there is testimony with regard to the gang expert, there could be a reference to, as counsel correctly stated, there could be reference to the fact that this evidence is necessary to show what Mr. Bracey could have done, because other gang members have done this in the past. We were doing everything we could to stipulate to Mr. Bracey's gang membership, to stipulate that he used the gun that they found during this robbery. All of those things we tried to get the court to tell the jury by stipulation, but I think that the reason why they wanted these photographs, for example, and the reason why they wanted this gang expert testimony is because that type of testimony can tend to demonstrate things to the jury that are not necessarily borne out by the evidence. And if you shave down everything that we've done with this appeal, that's exactly what we had a problem with, is that the four corners of the law seem to have been escaped, because all of this testimony that came in, we either didn't know it was coming, or it provided expert testimony that didn't exist, or it showed things to the jury that the officers didn't see. And for those reasons, this had a tendency, a calculated tendency, to inflame the passions of the jury, Your Honor, in a manner that's just not prescribed by 403. And if anyone has any further questions, I'd be more than happy to answer them. Thank you. It appears not. Thank you to both counsel.
judges: Rawlinson, Bea, Bastian